NUMBER 13-09-00610-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT OF TEXAS

 

                                  CORPUS
CHRISTI - EDINBURG

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



HUMBERTO
A. RANGEL,                                                            Appellant,

 

v.

 

NUECES
COUNTY,                                                                       
Appellee.

 

 



On appeal from the County Court at Law No. 2

of Nueces County, Texas.

 

 



  MEMORANDUM OPINION

 

Before Chief Justice Valdez and Justices Garza
and Benavides

Memorandum Opinion by Chief Justice Valdez

 

            By two issues, appellant, Humberto A. Rangel, challenges
the trial court’s summary judgment in favor of appellee, Nueces County, and its
denial of his cross-motion for summary judgment.  We affirm in part and reverse
in part and remand.

I.          Background[1]

            On December 16, 2003, Rangel sustained an injury
to his lower back while working for Nueces County as a mechanic’s assistant.[2]  On December 23,
2003, Rangel went to the emergency room at Christus Spohn Shoreline Hospital
complaining of severe pain in his lower back.[3] 
Eisen Espina, M.D., the attending physician at Spohn, ordered an MRI of
Rangel’s lower back.  Kenneth Vanexan generated a radiology report on December
29, 2003, documenting that Rangel suffered from the following:

Moderate central and
right-sided disk protrusion at L5-S1 with a component of annular tear at that
level.

 

Disk bulge changes
at L4-5 with facet joint arthropathy[[4]]
resulting in moderate spinal stenosis[[5]]
at that level.

 

Disk herniation with
extrusion centrally and to the right of midline at L3-4 with bony spinal canal
borderline in size at that level.

 

John M. Borkowski, M.D. reviewed Rangel’s MRI and concluded
that it “revealed multilevel lumbar degenerative disc disease with a right
sided disc protrusion at L5-S1 and evidence of [an] annular tear with disc
bulge changes at L4-5 with facet arthropathy and also a disc herniation with
extrusion centrally to the right of midline at L3-4.”  Dr. Borkowski
recommended a pain management consultation, consideration of epidural steroid
injection with medication, and physical therapy as tolerated.[6]

            Ryan N. Potter, M.D. administered a lumbar
epidural steroid injection on Rangel’s back “at the lowest level
possible . . . aim[ing] for the L5-S1 area . . . .”  Dr. Potter noted
that he would follow up with Rangel after forty-eight to seventy-two hours and
that if Rangel did not improve after one or two epidurals, Rangel “would be a
good candidate for a discogram to further elucidate what disc level is actually
causing his pathology and then treatment as such, depending on the results,
either an intradiscal procedure or invasive surgical procedure . . . .”

            On October 4, 2004, Rangel went to the emergency
room complaining of muscle spasms and severe back pain, which began after he
exited a swimming pool while performing exercises as part of his treatment plan
for his back injury.  Rangel was prescribed additional physical therapy and
“received treatment, as an exacerbation of the original injury” sustained on
December 16, 2003.[7]

            On May 26, 2006, Rangel went to the emergency
room and stated that when he stood up from the commode, he felt an unbearable
lower back pain.  Dr. Thomas Chodosh, D.O., Rangel’s treating physician,
reported in the hospital’s admitting notes, that Rangel was admitted for acute
lumbosacral pain.[8] 
Dr. Chodosh noted that he had last seen Rangel for a lumbosacral strain in October
2004.  According to Dr. Chodosh, Rangel had “been having lumbosacral spine
discomforts bothering him off and on periodically” and had “gone to the
emergency room one time since 10/04 for a pain injection.”  Dr. Chodosh
scheduled a follow-up examination with Rangel on May 30, 2006, in order to
reevaluate Rangel’s condition and “schedule a possible MRI of the lumbosacral
spine on an outpatient basis.”

            In a report responding to an inquiry from Nueces
County personnel dated June 19, 2006, Dr. Chodosh opined that the May 26, 2006
back pain was not related to the injury Rangel sustained on December 23, 2003. 
Dr. Chodosh stated that the basis for his opinion was that Rangel “had no
medical care since his dismissal and full release on October 25, 2004,” and
that Rangel said his emergency room visit made after October 2004, “was not
considered to be work related and was not reported to be work related to his
employer or to the emergency room personnel.”

            Jairo Puentes, M.D. examined Rangel on July 17,
2006.[9] 
Dr. Puentes generated a report stating:

[Rangel] states he
initially developed low back pain after he checked the air filter on a
vehicle.  He states he closed the hood and felt stabbing back pain to his lower
back which he states took his breath away.  He was evaluated at Christus Spohn
[H]ospital where he was admitted from 12/26/2003 through 01/02/2003.  He was
given an epidural steroid injection.  While he was in the hospital he had a
series of x-rays and MRI scans.  He was released and received two additional
epidural steroid injections by Dr. Potter.  He says he received five months [of]
physical therapy and returned back to work.  He says he has had flare ups of
low back pain since.  His last flare up was on 05/26/2006, where again he ended
up in the hospital . . . .  His claim [to his
insurance company] is being disputed because insurance company says this is not
related to the injury of 12/16/2003.

 

Dr. Puentes further stated:

1).        Rangel
continues with intermittent episodes of low back pain. . . .  I
believe his most recent episode of pain [on May 26, 2006,] is an exacerbation
of the original injury dated 12/16/2003.

 

            . . . .

 

3).        The
documentation supports a causal relationship between [Rangel’s] diagnosis and the
reported compensable [12/16/2003] injury. . . .  Rangel
recovered from the 1st episode but continued with exacerbations.  The MRI
clearly states he had herniated (extruded) disc at the time of his [12/16/2003]
injury.  This herniation is still present and has not been resolved.

 

4).        The
MRI is positive for a HNP at L3-4.  He also has compression of L4.  This is an
objective test that supports the complaints and diagnosis.

 

5).        The
treatment has been conservative to this date and has been reasonable and necessary
and related to the compensable injury of 12/16/2003.

 

On March 24, 2008, Rangel had lumbar
surgery at L2-L3, L4-L5, and L5-S1.  His doctor reported that Rangel stated
that he “is doing better” after the surgery.

II.         Procedural History

On September 26, 2006, the Texas Department
of Insurance Division of Workers’ Compensation (“DWC”) held a contested benefit
case hearing to decide whether “the compensable injury of December 16, 2003,
include[d] an injury consisting of a muscle ligamentous strain of the lumbar
spine, myofascitis[[10]]
of the lumbar spine, herniated nucleus pulposus[[11]] at the L3-L4
level of the lumbar spine and L4 radiculpathy[[12]]
after May 26, 2006.”  After considering reports and opinions from Dr. Chodosh,
and Dr. Puentes, the DWC found that:  Rangel sustained a low back strain and
herniated nucleus pulposus at the L3-L4 level as a result of the compensable
injury of December 16, 2003; Rangel did not seek medical treatment for the
compensable injury of December 16, 2003 after October 25, 2004; Rangel
sustained a new injury to the low back on May 26, 2006; and Rangel’s “muscle
ligamentous strain of the lumbar spine, myofascitis of the lumbar spine,
herniated nucleus pulposus at the L3-L4 level of the lumbar spine and L4
radiculopathy after May 26, 2006, is not a result of the work related injury
sustained on December 16, 2003.”  The DWC ruled that Nueces County was not
liable for providing benefits regarding Rangel’s May 26, 2006 injury.[13]

            Rangel filed his original petition on February
7, 2007 in the trial court challenging the DWC’s decision and claiming that
Nueces County was liable for providing medical benefits for treatment on and
after May 26, 2006.  See Tex. Lab.
Code Ann. § 410.251 (Vernon 2006) (providing that party that has
exhausted administrative remedies under statutory scheme entitled to judicial
review).  The parties agreed to submit the matter to the trial court on
cross-motions for summary judgment based on an agreed statement of facts.[14]  Nueces County
filed a motion for summary judgment contending that the injury was not
compensable as a matter of law.  Nueces County argued that the May 26, 2006
incident constituted a “new injury” or aggravation of an injury; Rangel
sustained the new injury or aggravation of a prior injury while at his home;
and any medical treatment provided after May 26, 2006, was required only as a
result of the new injury or aggravation.

            Rangel filed a response to Nueces County’s
motion for summary judgment and a cross-motion for summary judgment.  Rangel
contended that no genuine issue of material fact existed that his “continuing
medical expenses can only be attributed to his compensable injury sustained in
[December 2003] while working for Nueces County.”  Specifically, Rangel pointed
to, among other things, the reports written by Michael J. Pendleton, M.D., Dr.
Chodosh, and Dr. Puentes.[15] 
Rangel argued Dr. Chodosh’s opinion was unreliable because it was not supported
by any clinical or diagnostic exams; it was contradictory; and Dr. Chodosh
ignored the objective diagnostic exams and other physicians’ findings.  Therefore,
he argued that Dr. Chodosh’s reports were “insufficient to raise any genuine
issue of material fact on the existence of a ‘new’ injury or aggravation as
defined in workers’ compensation law.”

            On August 3, 2009, the trial court denied
Rangel’s motion for summary judgment finding “that the evidence establishes
that there are material and disputed fact issues . . . .” 
On the same day, the trial court, in its final take-nothing judgment, granted
Nueces County’s motion for summary judgment.  This appeal ensued.

III.        Standard of Review

            In a traditional motion for summary judgment,
the movant has the burden to establish that no genuine issue of material fact
exists and that he is entitled to judgment as a matter of law.  Sw. Elec.
Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002) (citing Tex. R. Civ. P. 166a(c)); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  A
defendant seeking a traditional motion for summary judgment must either
disprove at least one element of each of the plaintiff’s causes of action or
plead and conclusively establish each essential element of any affirmative
defense.  Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam);
Sanchez v. Matagorda County, 124 S.W.3d 350, 352 (Tex. App.–Corpus
Christi 2003, no pet.).  “A plaintiff who moves for summary judgment must prove
he is entitled to judgment as a matter of law on each element of the cause of
action.”  Fry v. Comm'n for Lawyer Discipline, 979 S.W.2d 331, 334 (Tex.
App.–Houston [14th Dist.] 1998, pet. denied) (citing MMP, Ltd. v. Jones,
710 S.W.2d 59, 60 (Tex. 1986); Harris County v. Walsweer, 930 S.W.2d
659, 663 (Tex. App.–Houston [1st Dist.] 1996, writ denied); Acme Brick v.
Temple Assocs., Inc., 816 S.W.2d 440, 442 (Tex. App.–Waco 1991, writ denied)).

We review the granting of a
traditional motion for summary judgment de novo. Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident
Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003); Branton v. Wood,
100 S.W.3d 645, 646 (Tex. App.–Corpus Christi 2003, no pet.).  “[W]e take as
true all evidence favorable to the non[-]movant, and we indulge every reasonable
inference and resolve any doubts in the non[-]movant's favor.”  Valence
Operating Co., 164 S.W.3d at 661.  When, as in this case, the trial court does
not state the grounds upon which summary judgment was granted, we must affirm
the judgment if any of the grounds advanced in the motion for summary judgment
are meritorious.  Branton, 100 S.W.3d at 647 (citing Carr v. Brasher,
776 S.W.2d 567, 569 (Tex. 1989)).

            When both sides move for summary judgment and
the trial court grants one motion and denies the other, we consider all the
evidence accompanying both motions to determine whether the trial court should
have granted either motion and, on finding error, render the judgment the trial
court should have rendered.  Ranger Ins. Co. v. Ward, 107 S.W.3d 820,
824 (Tex. App.–Texarkana 2003, pet. denied).  We must remand the case to the
trial court if neither movant is entitled to summary judgment.  Employers
Reins. Corp. v. Gordon, 209 S.W.3d 913, 917 (Tex. App.–Texarkana 2006, no
pet.); Ward, 107 S.W.3d at 824.

IV.       Discussion

            By his first issue, Rangel contends that the
trial court erred in granting Nueces County’s motion for summary judgment
because Dr. Chodosh’s opinion was not admissible, and even if Dr. Chodosh’s
opinion was admissible, there was no evidence that Rangel sustained a “new
injury in 2006.”  By his second issue, Rangel contends that the trial court
erred in denying his cross-motion for summary judgment because “the
uncontroverted evidence established that his 2003 work-related injury was the
producing cause of his lower back injury and the diagnosed HNP.”

A.        Admissibility of Dr. Chodosh’s Reports

In this case, the parties filed an
agreed statement of facts pursuant to rule 263 stating:

The
parties have agreed to submit this matter to the Court on Cross-Motions for
Summary Judgment based on the facts set forth herein.  The Parties agree that
these facts and attached exhibits are all the facts of the
case. . . . .  In accordance with Texas Rule of
Civil Procedure 263, the Parties agree that the following facts as well as
exhibits attached hereto are true and correct copies, and are incorporated by
reference the same as if fully set forth herein:

 

            . . . .

 

Dr.
Chodosh found that [Rangel] sustained a new injury on May 26, 2006, and did not
sustain a flare-up of the December 16, 2003 compensable injury, because
[Rangel] had been performing his regular work duties and had not sought medical
treatment since October 25, 2004.

 

. . . .

 

Dr.
Puentes found that [Rangel] sustained a flare-up of the December 16, 2003
injury, because the pain was in the same location, and had a similar diagnosis
to the original injury.

 

The parties further stated in their agreed statement of
facts that “these facts and exhibits are the facts and exhibits upon which this
[summary judgment] is to be tried.”  The parties attached Dr. Chodosh’s and Dr.
Puentes’s medical reports to the agreed statement of facts.  The parties
further requested that the trial court “enter its judgment [regarding the
cross-motions for summary judgment] based on these agreed facts which have been
submitted by the parties.”

Stipulations in an agreed case are
binding on the parties, the trial court, and the reviewing court.  Alma
Group L.L.C. v. Palmer, 143 S.W.3d 840, 843 (Tex. App.–Corpus Christi 2004,
pet. denied); M.J.R.'s Fare v. Permit & License Appeal Bd., 823
S.W.2d 327, 330 (Tex. App.–Dallas 1991, writ denied); see Tex. Farm Bureau
Mut. Ins. Co. v. Sturrock, 146 S.W.3d 123, 125 n.2 (Tex. 2004); Diamond
Shamrock Ref. and Mktg. Co. v. Nueces County Appraisal Dist., 876 S.W.2d
298, 301 n.2 (Tex. 1994) (recognizing that the court of appeals made an impermissible
inference that conflicted with the facts as stipulated by the parties in their
statement of agreed facts under rule 263); Lawler v. Lomas & Nettleton
Mortgage Investors, 691 S.W.2d 593, 595 (Tex. 1985) (“An appellate court,
in reviewing a case tried upon an agreed statement of facts, is not permitted
to draw any inference or find any fact not embraced in the agreement unless as
a matter of law such further inference or fact is necessarily compelled by the
agreed upon evidentiary facts.”).  The question on appeal is therefore limited
to the correctness of the trial court's application of the law to the admitted
facts.  City of Corpus Christi v. Gomez, 141 S.W.3d 767, 770 (Tex.
App.–Corpus Christi 2004, no pet.); Unauthorized Practice of Law Comm. v.
Jansen, 816 S.W.2d 813, 814-15 (Tex. App.–Houston [14th Dist.] 1991, writ
denied).

Because Rangel stipulated that Dr.
Chodosh “found that [Rangel] sustained a new injury on May 26, 2006,” that fact
is binding on Rangel and this Court for purposes of summary judgment.  See
Alma Group L.L.C., 143 S.W.3d at 843; M.J.R.'s Fare, 823 S.W.2d at 330;
see also Perry v. Brooks, 808 S.W.2d 227, 229 (Tex. App.–Houston [14th
Dist.] 1991, no writ) (“A stipulation is an agreement, admission or concession
made in the course of a judicial proceeding by
parties. . . .  As such, stipulations enjoy equal
dignity with judicial admissions, which eliminate an adversary's necessity of
proof and establish the admitted elements as a matter of law.”) (internal
citations omitted).  Furthermore, Rangel agreed that the case would be tried
upon the agreed attached exhibits, including Dr. Chodosh’s report.  Therefore, because
Rangel agreed that the trial court could consider the attached exhibits for
purposes of the summary judgment, he may not now challenge Dr. Chodosh’s
report.  We overrule Rangel’s first issue to the extent that he argues that we must
exclude Dr. Chodosh’s opinion.  See Reed v. Valley Fed. Sav. & Loan Co.,
655 S.W.2d 259, 264 (Tex. App.–Corpus Christi 1983, writ ref'd n.r.e.) (“[T]he
trial court and the reviewing court are limited to the agreed facts and cannot
make any findings of fact which do not conform to the stipulated facts.”).

B.        Genuine Issue of Material Fact

            Rangel filed his petition with the county court
seeking review of DWC’s conclusion that “the compensable injury of December 16,
2003 did not include the same injuries sustained by [Rangel] on May 26, 2006.” 
See Tex. Lab. Code Ann. §
408.021 (Vernon 2006) (“An employee who sustains a compensable injury is
entitled to all health care reasonably required by the nature of the injury as
and when needed”).  Nueces County moved for summary judgment on the basis that
there was no genuine issue of material fact concerning whether the 2006 injury
was a new injury or whether it was related to the 2003 injury.  Rangel filed a response
to Nueces County’s motion and a cross-motion for summary judgment on the basis
that there was no genuine issue of material fact concerning whether the 2003
compensable injury was the producing cause of the pain he felt on May 26,
2006.  Therefore, the issue before the trial court was whether a genuine issue
of material fact existed regarding whether Rangel’s 2006 pain was caused by the
injury he sustained on December 16, 2003 (the compensable injury).

As summary judgment evidence,
Nueces County presented, among other things, Dr. Chodosh’s opinion that the
2006 injury was not related to the previous 2003 compensable injury.  In
response to Nueces County’s motion for summary judgment, Rangel provided Dr.
Puentes’s report stating that the documentation supported a conclusion that
there was a “causal relationship” between Rangel’s 2003 compensable injury and
the 2006 incident.[16] 
Dr. Puentes opined that the herniation observed on the MRI taken at the time of
Rangel’s 2003 injury clearly “states he had herniated (extruded) disc” and that
“herniation is still present and has not been resolved.”  Furthermore, in their
agreed statement of facts, the parties agreed to the following facts:  (1) Dr.
Chodosh found that the pain Rangel suffered on May 26, 2006 was not due to a
flare-up of the December 16, 2003 compensable injury; (2) Dr. Chodosh found
that Rangel suffered a new injury on May 26, 2006; and (3) Dr. Puentes found
that Rangel sustained a flare-up of the December 16, 2003 injury on May 26,
2006.

We conclude that a genuine issue of
material fact exists concerning whether the pain Rangel suffered on May 26,
2006 was caused by the 2003 compensable injury.  Sw. Elec. Power Co., 73
S.W.3d at 215; Clear Creek Basin Auth., 589 S.W.2d at 678.  Therefore, based
on our de novo review, neither party is entitled to judgment as a matter of
law.  See Ranger Ins. Co., 107 S.W.3d at 824 (“When both sides
move for summary judgment and the trial court grants one motion and denies the
other, we consider all the evidence accompanying both motions to determine
whether the trial court should have granted either motion and, on finding
error, render the judgment the trial court should have rendered.”); Employers
Reins. Corp., 209 S.W.3d at 917 (providing that we must remand the case to
the trial court if neither movant is entitled to summary judgment).  We
overrule Rangel’s second issue.  See Ranger Ins. Co., 107 S.W.3d
at 824; Employers Reins. Corp., 209 S.W.3d at 917

 

V.        Conclusion

            We affirm the trial court’s denial of Rangel’s
motion for summary judgment, and we reverse the trial court’s summary judgment
in favor of Nueces County.  Accordingly, we remand this cause to the trial
court for further proceedings consistent with this opinion.

_________________

                                                                                                Rogelio Valdez

                                                                                                Chief
Justice

 

Delivered and filed the 

10th day of March, 2011.

 









[1]
The parties filed with the trial court an agreed statement of facts pursuant to
rule 263, asking the trial court to determine their cross-motions for summary
judgment only on those facts and attached exhibits.  See Tex. R. Civ. P. 263 (“Parties may
submit matters in controversy to the court upon an agreed statement of facts
filed with the clerk, upon which judgment shall be rendered as in other cases;
and such agreed statement signed and certified by the court to be correct and
the judgment rendered thereon shall constitute the record of the cause.”).
Those facts are binding on this Court.  M.J.R.'s Fare v. Permit &
License Appeal Bd., 823 S.W.2d 327, 330 (Tex. App.–Dallas 1991, writ
denied) (explaining that stipulations in an agreed case are binding on the
parties, the trial court, and the reviewing court).  Therefore, we have relied
only on those stipulated facts and exhibits for purposes of this memorandum
opinion.  See Tex. Farm Bureau Mut. Ins. Co. v. Sturrock, 146 S.W.3d
123, 125 n.2 (Tex. 2004) (explaining that pursuant to rule 263, the agreed
statement of facts and the judgment constitute the record; therefore the court
would only “look to those sources to determine the question presented”).





[2]
Rangel had been a Nueces County employee since November 22, 1999.





[3]
Rangel filed a worker’s compensation claim for his December 16, 2003 injury. 
Nueces County, a self-insured carrier providing workers’ compensation coverage
to its employees, determined that a compensable injury had occurred and paid
workers’ compensation benefits to Rangel pursuant to section 504.011(3) of the
labor code.  See Tex. Lab. Code
Ann. § 504.011(3) (Vernon 2006).





[4]
“Arthropathy” is “a disease of a joint.”  Merriam-Webster Online Dictionary,
available at http://www.merriam-webster.com/dictionary/arthropathy (last
visited Feb. 25, 2011).





[5]
“Stenosis” is “a narrowing or constriction of the diameter of a bodily passage
or orifice.”  Id. at http://www.merriam-webster.com/dictionary/stenosis
(last visited Feb. 25, 2011).





[6]
Dr. Borkowski stated that “any type of surgical intervention would require
multilevel effusion, this is something that, of course, we would like to avoid
. . . .”





[7]
Nueces County concedes in its brief that Rangel was treated for this incident
“as a flare-up of the original injury” sustained on December 16, 2003.





[8]
“Lumbosacral” means “relating to the lumbar and sacral regions or parts.”  Id.
at http://www.merriam-webster.com/dictionary/lumbosacral (last visited Feb. 25,
2011).





[9]
The parties stipulated in their agreed statement of facts that Dr. Puentes was
Nueces County’s Required Medical Examiner.





[10]
“Myofascitis” is defined as an “inflammation of a muscle and its fascia.”  Encyclo
Online Encyclopedia, available at http://www.encyclo.co.uk/define/myofascitis
(last visited Feb. 25, 2011).





[11]
“Nucleus pulposus” is defined as “an elastic pulpy mass lying in the center of
each intervertebral fibrocartilage and regarded as a remnant of the notochord.” 
Merriam-Webster Online Dictionary, available at http://www.merriam-webster.com/medical/pulposus
(last visited Feb. 25, 2011).





[12]
“Radiculpathy” is defined as “irritation of or injury to a nerve root (as from
being compressed) that typically causes pain, numbness, or weakness in the part
of the body which is supplied with nerves from that root.”  Id. at http://www.merriam-webster.com/dictionary/radiculopathy
(last visited Feb. 25, 2011).





[13]
The DWC held that Rangel “remained entitled to medical benefits for the
compensable injury . . . .”





[14]
See Tex. R. Civ. P. 263.





[15]
We note that Dr. Pendleton’s letter was not attached as an exhibit to the
parties’ agreed statement of facts.  Therefore, we will not consider it on
appeal.





[16]
In their agreed statement of facts, Nueces County and Rangel stipulated that
the trial court would consider, among other things, the following exhibits: 
(1) Dr. Puentes’s report from The Center for Back Pain and Management; and (2)
Dr. Chodosh’s report from Doctors Regional Hospital.