**Affirmed and Opinion Filed July 19, 2022**

# S

**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00516-CV**

**ANDREW CHOI, SN DALLAS-AMERICAN CORPORATION,
AND NEHA AND AVINASH GUPTA, Appellants
V.
BRIXMOR HOLDINGS 12 SPE, LLC, Appellee**

**On Appeal from the 68th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-18-18475**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Partida-Kipness
Opinion by Justice Osborne

In this suit for breach of a commercial lease and guaranty agreements, the trial court rendered judgment for the landlord, plaintiff and appellee Brixmor Holdings 12 SPE, LLC ("Brixmor") after a bench trial. Appellants Andrew Choi, SN Dallas-American Corporation ("SNDA"), and Neha and Avinash Gupta, former tenants or alleged guarantors, challenge the trial court's evidentiary rulings and the sufficiency of the evidence to support the trial court's findings, conclusions, and judgment.

We conclude that Brixmor offered sufficient evidence of its causes of action and the trial court did not abuse its discretion in its evidentiary rulings. Accordingly, we affirm the trial court's judgment.

## BACKGROUND

Brixmor, as landlord, and SNDA, as tenant, entered into a five-year lease agreement for commercial premises on Webb Chapel Road in Dallas in 2016. The lease agreement was admitted into evidence at trial as Plaintiff's Exhibit 1 ("PX1"). Avinash Gupta signed PX1 on SNDA's behalf.

PX1 includes a guaranty agreement as Exhibit G. Exhibit G provides in part that "Guarantor . . . agrees that this Guaranty shall be a continuing Guaranty of payment, and the Guarantor's liability hereunder shall in no way be affected or diminished by reason of any assignment of the Lease by Tenant . . . ." Both Neha and Avinash Gupta admit signing Exhibit G as guarantors.

In 2018, SNDA assigned the lease to ETBK Investments, LLC ("ETBK"). Brixmor was also a party to the "Assignment, Assumption and Amendment No. 1 of Lease" to ETBK dated March 5, 2018. The assignment was admitted into evidence at trial as Plaintiff's Exhibit 3 ("PX3"). PX3 provided that "neither Assignor [identified as SNDA] nor the Guarantors [identified as the Guptas] shall be released from liability for the performance of the obligations contained in the Lease, including, without limitation, the payment of all rent . . . and all charges and deposits . . . due to be paid to Landlord and the liability of Assignor and the Guarantors shall

continue as if this Agreement had not been made . . . ." Under the signature lines for Brixmor as landlord, SNDA as assignor, and ETBK as assignee was a paragraph providing, "The undersigned, as Guarantors as aforesaid, hereby consent to the execution of this Amendment by Assignor and agree that their Guaranty is hereby restated by this reference and deemed to be in full force and effect." Avinash Gupta admits signing PX3 on SNDA's behalf and as guarantor. Neha Gupta denies signing PX3 as guarantor.

Edward Tan[1] and Andrew Choi were named in PX3 as "Additional Guarantors" of the amended lease. Plaintiff's Exhibit 4 ("PX4") is a guaranty agreement dated March 5, 2018, providing that Choi "hereby guarantees to Landlord [identified as Brixmor] . . . the payment of the rent and the full and faithful performance of all the terms, covenants and conditions in the Lease . . . to be paid and performed by [ETBK], as tenant, under the Lease . . . ." Choi contends his signature on PX4 is a forgery. The trial court admitted PX4 into evidence at trial after overruling Choi's objections to its admission.

Choi, however, admitted signing seven checks[2] to Brixmor for rental of the premises between October 2017 and May 2018. These checks, written on the account of Fortune Mobile, LLC and bearing Choi's signature, were admitted into evidence

---

[1] Both ETBK and Tan were defendants in this lawsuit. Both filed answers but neither appeared at trial. Consequently, the trial court rendered judgment against them. They are not parties to this appeal, and we do not review the portions of the judgment rendered against them.

[2] The record reflects discussion of six checks rather than seven, but the exhibit in question includes seven checks and Choi testified he signed all of the checks in the exhibit.

at trial. Brixmor introduced evidence that Choi and ETBK were managing members of Fortune Mobile. The document showing this information, filed by Fortune Mobile with the Secretary of State of Texas, was also signed by Choi.[3] A subsequent lockout notice in August 2018 was addressed to Choi. Brixmor introduced evidence of demand letters sent on Fortune Mobile's behalf in response to the lockout, claiming that "our client was locked out of his place of business" but "has a right to possession" of the premises.

Choi sought to introduce evidence he contended would show that Brixmor failed to mitigate its damages. During his cross-examination of Brixmor representative Lauren Bottonari, Choi sought to adduce evidence that at the time of the assignment, Brixmor should have done additional investigation of ETBK, the proposed assignee.[4] Brixmor objected to questions on this subject as irrelevant to "whether there was a breach of the assignment and guaranty." Choi's counsel responded that "[t]his is to show that [Brixmor] did not mitigate this properly." The trial court asked, "How does this go to mitigation?" Counsel responded that Brixmor would have learned that ETBK was a "shell company" that was engaging in fraud. When the Guptas' counsel further argued that the evidence was admissible because

---

[3] Although Choi testified that his attorney defrauded him into signing the document, he admitted that his signature on it was genuine.

[4] At trial, appellants argued that Choi had obtained a summary judgment against ETBK, Tan, and other parties in another lawsuit arising from allegedly fraudulent transactions in the sale of certain mobile wireless stores. Choi did not argue or offer evidence in this lawsuit that Brixmor was a party to that suit or was involved in any fraudulent transaction. Choi argued only that Brixmor should have discovered ETBK's fraud before approving the assignment at issue in this case.

–4–

they had pleaded failure to mitigate as an affirmative defense, the trial court responded that "I don't think this is a mitigation"; but if Brixmor "failed to lease it, that would be a mitigation." The trial court sustained Brixmor's objection, but stated that the defendants could submit an offer of proof by affidavit. Neither Choi nor the Guptas did so.

The trial court heard testimony by Avinash and Neha Gupta, Choi, Bottonari, and Selina Golden, formerly of Brixmor. In its findings of fact, the trial court found that "Defendants have defaulted on their obligations under their respective agreements. In particular, [SNDA] and ETBK have failed and refused to pay rent . . . and have abandoned the premises," and  Avinash and Neha Gupta and Choi "have failed and refused to pay tenant's obligations as required by [their guaranty agreements]." The trial court rendered judgment for Brixmor, awarding actual damages of $107,368.56 and additional amounts in attorney's fees and interest. This appeal followed.

**ISSUES AND STANDARDS OF REVIEW**

Choi asserts five issues on appeal. In his first three issues, Choi contends the trial court erred by (1) admitting PX4 into evidence, (2) excluding evidence of Brixmor's failure to mitigate damages, and (3) making clearly erroneous findings and conclusions that Choi executed PX4, guaranteed the lease, and failed to fulfill his obligations under the guaranty, and that Brixmor complied with its mitigation obligations. In his fourth and fifth issues, Choi challenges the legal and factual

–5–

sufficiency of the evidence to support the trial court's findings and conclusion that Choi signed PX4 and defaulted on his obligations under it.

In four issues, the Guptas contend the trial court erred by (1) admitting PX4 into evidence, (2) excluding evidence of mitigation, (3) finding and concluding that the Guptas were liable for breach of the amended lease, and (4) rendering judgment against the Guptas that was not supported by legally and factually sufficient evidence. The Guptas also "reference and incorporate" Choi's issues.

"A trial court's findings of fact issued after a bench trial have the same weight, and are judged by the same appellate standards, as a jury verdict." *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019). When the appellate record contains a reporter's record, as in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Wyde v. Francesconi*, 566 S.W.3d 890, 894 (Tex. App.—Dallas 2018, no pet.). An appellant who challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial must demonstrate there is no evidence to support the adverse finding. *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). In our review of the record, we determine whether any evidence supports the challenged finding. *Id.* If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Id.*; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (more than a scintilla of evidence exists when evidence "rises

to a level that would enable reasonable and fair-minded people to differ in their conclusions" [internal quotation omitted]).

When an appellant challenges the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the finding. *Sheetz*, 503 S.W.3d at 502. We set aside the finding for factual insufficiency only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

The trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Sheetz*, 503 S.W.3d at 502. As long as the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the fact-finder. *Id.* (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

We review de novo a trial court's conclusions of law. *See Compass Bank v. Goodman*, 416 S.W.3d 715, 718–19 (Tex. App.—Dallas 2013, pet. denied). We are not bound by the trial court's legal conclusions, but conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Sheetz*, 503 S.W.3d at 502. Incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory. *Id.* Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law. *Id.*

We review a trial court's evidentiary rulings for abuse of discretion. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). We must

uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). Unless the trial court's erroneous evidentiary ruling probably caused the rendition of an improper judgment, we will not reverse the ruling. *Id.* When reviewing whether evidence was properly admitted or excluded, we must review the entire record. *Estate of Finney*, 424 S.W.3d 608, 612 (Tex. App.—Dallas 2013, no pet.).

DISCUSSION

**A. Choi's liability under the guaranty**

Four of Choi's issues arise from his contention that his signature on PX4, the guaranty agreement, was forged. The issues overlap, but Choi's arguments fall into four categories. First, Choi argues that he preserved his complaint by filing a verified denial and by timely objecting to PX4's admission into evidence at trial. As Brixmor does not contest either of these matters, we need not discuss them further.

Second, Choi argues the trial court erroneously concluded that PX4 was self-authenticating under civil procedure rule 193.7. *See* TEX. R. CIV. P. 193.7. Assuming the trial court erroneously relied on rule 193.7 in admitting PX4 into evidence, however, we "must uphold a correct lower court judgment on any legal theory before it, even if the court gives an incorrect reason for its judgment." *In re Estate of Hutchins*, 391 S.W.3d 578, 585 (Tex. App.—Dallas 2012, no pet.) (internal quotation omitted). "A trial court cannot abuse its discretion if it reaches the right result." *Id.*

–8–

Even if PX4 was not self-authenticating under rule 193.7, Brixmor was not precluded from otherwise establishing that PX4 was, in fact, Choi's guaranty of the tenant's obligations under the lease. In general, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). Choi's third argument is that there is no evidence—either lay or expert testimony or documentary evidence—that the signature on PX4 is genuine. He contends the only evidence is his testimony denying that he signed PX4. Again, we disagree.

Choi's principal theme at trial was that he had been defrauded by ETBK and its principals. By the time Brixmor offered PX4 into evidence, the trial court had heard testimony from both Avinash and Neha Gupta as well as Choi himself of Choi's involvement in the transaction that resulted in assignment of the lease to ETBK and ETBK's tenancy in the premises. Other documents relating to the transaction and bearing Choi's admittedly genuine signature had already been admitted into evidence before Brixmor offered PX4.

Brixmor called Choi as an adverse witness during its case-in-chief. Choi testified that he signed the Secretary of State filing admitted into evidence as PX11 and the seven checks included in PX6. It was within the trial court's province as finder of fact to compare the signature on PX4 with these admittedly genuine signatures in evidence and to decide whether Choi signed PX4. *See* TEX. R. EVID.

901(b)(3) (authentication requirement may be satisfied by comparison by trier of fact "with a specimen that the court has found is genuine"); *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 848 (Tex. App.—Dallas 2011, no pet.) (trial judge acting as trier of fact could have disregarded expert evidence regarding alleged forgery "and based her findings on her own examination of the two disputed signatures and the testimony of the notaries"); *Grothe v. Grothe*, No. 11-14-00084-CV, 2016 WL 1274059, at \*2 (Tex. App.—Eastland Mar. 31, 2016, no pet.) (mem. op.) (holding that members of the jury could have compared the signatures on each document admitted with the signature on a contested will to determine whether they believed the signature on the purported will was genuine).

Even without comparison of the signatures, it is undisputed that Choi wrote the checks in PX6 for the purpose of paying the rent under the lease, supporting a finding of Choi's involvement in the transaction. Another exhibit bearing Choi's admitted signature showed that Choi was a managing member of Fortune Mobile, and there was evidence that Choi wrote the checks from Fortune Mobile's account. Choi also testified that his attorney's demand letter claiming the "right to possession" of the premises "indicates that" it was sent on his behalf. In addition, it was not error for the trial judge to consider the undisputed fact that PX4 came from Choi's own document production, even if it was not self-authenticating under rule 193.7. We conclude that Brixmor produced evidence sufficient to support a finding

that PX4 "is what [Brixmor] claims it is," that is, Choi's signature on an agreement guaranteeing the tenant's obligations under the lease. *See* TEX. R. EVID. 901(a).

Consequently, even if the trial court gave an incorrect reason for admitting PX3, we must uphold its ruling. *See M.J.R.'s Fare of Dallas, Inc. v. Permit & License Appeal Bd. of Dallas*, 823 S.W.2d 327, 331 (Tex. App.—Dallas 1991, writ denied) ("We affirm the trial court's judgment regardless of whether the trial court gives the correct legal reason for the judgment it enters or whether any reason is given at all."). The trial court was the sole judge of the credibility of the evidence, including Choi's testimony that he did not sign the document. *See Sheetz*, 503 S.W.3d at 502. We conclude that the trial court did not abuse its discretion by admitting PX4 into evidence. *See Estate of Finney*, 424 S.W.3d at 612.

Choi's fourth argument, asserted in his fifth and six issues, is that the trial court's findings and conclusions are clearly erroneous because PX4 was the only evidence of his alleged guaranty of the amounts due under the lease. Choi argues that because PX4 was forged, and there was no other evidence requiring him to make any payments under the lease, there was no evidence to support the trial court's findings and conclusion that he signed and breached the guranty. Again, we disagree.

The trial court found that Choi executed PX4 "pursuant to which [Choi] . . . unconditionally guaranteed the full performance of all terms, covenants and conditions of the Lease Agreement, including the payment of all rentals and other charges accruing under the Lease Agreement." The trial court further found that

–11–

Choi "defaulted on [his] obligations" under his guaranty and had "failed and refused to perform tenant's obligations" as the guaranty required. The trial court concluded that Choi breached his obligations under PX4.

As we have discussed, there was evidence from which the trial court could find that Choi's signature on PX4 was genuine and that Choi was involved in the transaction at issue. Although Choi's counsel argued that Choi was the victim of ETBK's fraud, there was no evidence of fraud by Brixmor in entering into the original or amended lease or guaranties. It is undisputed that no tenant or guarantor paid any amounts due under the lease and guaranties after September 2018. We conclude Brixmor offered more than a scintilla of evidence to support the trial court's findings and conclusions that Choi breached his obligations under the guaranty, and the trial court's findings are not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176; *Sheetz*, 503 S.W.3d at 502.

Because the trial court did not abuse its discretion in admitting PX4 into evidence and there was legally and factually sufficient evidence to support the trial court's findings and conclusions regarding Choi's liability on the guaranty, we decide Choi's first, third, fourth, and fifth issues against him.

## B. Failure to mitigate

Choi's remaining issue and the Guptas' second issue challenge the trial court's exclusion of evidence regarding "mitigation of damages." As we have explained,

Choi and the Guptas argued at trial that had Brixmor undertaken an investigation of ETBK at the time of the assignment, Brixmor would have learned that ETBK was a "shell company" that was engaging in fraud. In sum, appellants argued that Brixmor's duty to mitigate arose before any breach by the tenants or guarantors—indeed, before the amended lease and Choi's guaranty had been signed. On appeal, they also argue there is no evidence to support the trial court's finding that "Brixmor has complied with its mitigation obligations."[5]

Under section 91.006 of the property code, "[a] landlord has a duty to mitigate damages if a tenant abandons the leased premises in violation of the lease." TEX. PROP. CODE § 91.006. We have explained that the landlord's duty to mitigate "requires him to use 'objectively reasonable efforts' to release the premises to a tenant 'suitable under the circumstances.'" *White v. Harrison*, 390 S.W.3d 666, 675 (Tex. App.—Dallas 2012, no pet.) (quoting *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex. 1997)). Both the property code and the case law define the duty to mitigate as arising after the tenant abandons the premises, not before the lease is signed. *See* TEX. PROP. CODE § 91.006 (duty arises

---

[5] The Guptas also argue that they were precluded from cross-examining Brixmor's witness about Brixmor's "affirmative steps to market the property, the nature and character of prospective tenants, the timeline among prospective tenants, the financial background and solvency of prospective tenants, and the landlord's own analysis and basis in picking and denying all the prospective tenants." But they do not provide any citations to the record to support their assertion that the trial court excluded any such evidence or precluded any cross-examination on these subjects. The trial court's rulings were limited to evidence of ETBK's alleged fraud before the lease was assigned.

"if a tenant abandons" the premises); *White*, 390 S.W.3d at 675 (duty is to use reasonable efforts to re-lease premises to another suitable tenant after breach).[6]

Although it is the landlord's duty to mitigate damages, the tenant has the burden of proving that the landlord has failed to mitigate damages and the amount by which the landlord could have reduced its damages. *Cole Chem. & Distrib., Inc. v. Gowing*, 228 S.W.3d 684, 687 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Neither the Guptas nor Choi offered or sought to offer evidence about Brixmor's failure to relet the premises. Nor did they make an offer of proof of the amount of damages they contend Brixmor should have mitigated by undertaking an investigation before entering into the assignment, even though the trial court invited them to "submit an Offer of Proof on that via affidavit" after sustaining Brixmor's objection.

We conclude that the trial court did not abuse its discretion in sustaining Brixmor's objection to admission of evidence regarding a duty to mitigate arising before the amended lease was signed, and in any event, Choi and the Guptas did not establish that any error was reasonably calculated to cause and probably did cause

---

[6] We have discussed a duty to mitigate damages in contexts other than real property leases, describing the duty as one "to stop the accumulation of losses" from a breach. *See Wyde*, 566 S.W.3d at 895 ("Thus, the doctrine of mitigation of damages prevents a party from recovering for damages *resulting from a breach of contract* that could be avoided by reasonable efforts on the part of the plaintiff." [Emphasis added]). We have not, however, imposed a duty to mitigate before a contract has been breached or before it has been signed. *See id.* ("Contract law broadly supports the idea that a plaintiff should minimize damages by taking affirmative steps, when applicable, to stop the accumulation of losses.") (collecting cases).

the rendition of an improper judgment. *See Estate of Finney*, 424 S.W.3d at 612. We decide Choi's second issue and the Guptas' second issue against them.

## C. SNDA's and the Guptas' remaining issues

In their first issue, SDNA and the Guptas argue the trial court erred by admitting PX4, Choi's guaranty, into evidence. We have decided this complaint against Choi and make the same disposition here.

In their third and fourth issues, SNDA and the Guptas challenge the legal and factual sufficiency of the evidence to support the trial court's findings of fact, conclusions of law, and judgment. They specifically challenge the trial court's "findings of fact that allege they are liable" to Brixmor under PX3 (the assignment to ETBK) and the corresponding conclusion of law that they breached their obligations under the 2016 guaranty (Exhibit G to PX1 and admitted separately as PX2).

Citing *Escalante v. Luckie*, 77 S.W.3d 410 (Tex. App.—Eastland 2002, pet. denied), for the elements of Brixmor's claim for breach of guaranty,[7] the Guptas argue that Brixmor failed to establish its claim because (1) Neha did not sign PX3 consenting to the assignment, (2) Choi established his forgery defense, and (3) they actually assigned the lease to an entity called MJ Wireless, not to ETBK.

---

[7] The court in *Escalante* stated the elements as (1) the existence and ownership of a guaranty agreement, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor. *Escalante*, 77 S.W.3d at 416.

Brixmor, however, offered evidence that (1) SNDA leased the premises, (2) the Guptas guaranteed SNDA's obligations under the lease, (3) the Guptas' 2016 guaranty expressly provided that the Guptas' obligations would survive in the event the lease was assigned, (4) the lease was assigned to ETBK, and (5) the tenant failed to pay amounts due under the lease. Thus, even if Neha Gupta did not sign PX3, PX1 provided that her obligation under the original lease and guaranty continued after the assignment. The same is true even if Choi's signature on PX4 is a forgery; PX4 addresses only Choi's liability as a guarantor, not the tenant's primary obligation under the amended lease or the Guptas' obligations as guarantors.

We conclude that there was legally and factually sufficient evidence to support the trial court's findings of fact that the Guptas executed an unconditional guaranty of the lease in 2016 and defaulted on their obligations under the guaranty, and the trial court's conclusion of law that the Guptas breached their obligations under the 2016 guaranty. We decide the Guptas' third and fourth issues against them.

## CONCLUSION

The trial court's judgment is affirmed.


200516f.p05

/Leslie Osborne//
LESLIE OSBORNE
JUSTICE

–16–

# S

## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ANDREW CHOI, SN DALLAS-
AMERICAN CORPORATION AND
NEHA AND AVINASH GUPTA,
Appellants

No. 05-20-00516-CV     V.

BRIXMOR HOLDINGS 12 SPE,
LLC, Appellee

On Appeal from the 68th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-18475.
Opinion delivered by Justice
Osborne. Justices Schenck and
Partida-Kipness participating.

In accordance with this Court's opinion of this date, the judgment of the trial
court is **AFFIRMED**.

It is **ORDERED** that appellee Brixmor Holdings 12 SPE, LLC recover its
costs of this appeal from appellants Andrew Choi, SN Dallas-American Corporation
and Neha and Avinash Gupta.

Judgment entered this 19th day of July, 2022.